UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

**JUPITER WRECK, INC.,**

    PLAINTIFF,

v.

**UNITED STATES ARMY CORPS OF ENGINEERS,**

    DEFENDANT.

_____/

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF AND WRIT OF MANDAMUS**

Plaintiff, JUPITER WRECK, INC. ('JWI'), by and through their undersigned counsel file this Complaint for Declaratory and Injunctive Relief, and a Writ of Mandamus and show as follows:

Jurisdiction:

1. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this claim arises under the laws of the United States, specifically Chapter Eleven of Title 33, Navigation and Navigable Waters.

2. The Court may grant declaratory relief in this action under 28 U.S.C. §§ 2201 – 2202 as this action seeks a declaration of rights and violations of those rights under Chapter Eleven of Title 33, Navigation and Navigable Waters, and more particularly 33 U.S.C. §§ 494, 512, 513 and Clean Water Act 33 U.S.C. §1344.

3. In the absence of declaratory relief, the Court is also empowered by 28 U.S.C. § 1361 to issue a writ of mandamus compelling the Army Corps of Engineers ("ACOE") to act in

accordance with their duties under Chapter Eleven of Title 33, Navigation and Navigable Waters, and more particularly 33 U.S.C. §§ 494, 512, 513 and Clean Water Act 33 U.S.C. §1344.

4. This Court may properly maintain personal jurisdiction over Defendant because their contacts with this judicial district are sufficient for the exercise of jurisdiction over Defendant, satisfying the standard set forth by *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

5. Venue is properly before this Court under 28 U.S.C. § 1391 as the subject shipwreck is within this Court's jurisdiction.

Parties:

6. Plaintiff, Jupiter Wreck, Inc., is a Florida corporation with it's principal place of business in Florida.

7. Defendant, United States Army Corps of Engineers ("ACOE"), is an agency of the United States of America, Department of Defense, and is responsible for the maintenance of navigable waterways and the prevention of obstructions to navigation, including bridges, pursuant to Section 10 of the Rivers and Harbors Act of 1899. 33 U.S.C. § 1; 33 U.S.C. § 401 et seq. and Clean Water Act 33 U.S.C. §1344.

Background and Operative Facts:

8. This dispute arises over ACOE refusing the reauthorization of a 30-year-old permit which has been reauthorized approximately every five years, permitting proper salvage operations by JWI of a subject shipwreck (the "Wreck") and the ACOE's authority to require a permit is based on outdated law that has been rewritten by them.

9. As Judge Marcus noted, "Th[is] case[] center[s] on the remains of a Spanish Galleon which sunk off the coast of Florida sometime in the late seventeenth century. . . .

[Plaintiff] JWI seeks to uncover the artifacts from this site for their historical and monetary value." *Jupiter Wreck, Inc. v. Unidentified Wrecked & Abandoned Vessel*, No. 87-8548-CV-Moore/Hopkins, 2017 U.S. Dist. LEXIS 191613, at *2 (S.D. Fla. Nov. 17, 2017)(citing to *Jupiter Wreck, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 691 F. Supp. 1377, 1380 (S.D. Fla. 1988) ("Admiralty Claim").

10. Pursuant to the Admiralty Claim JWI was awarded the salvage rights to the vessel as to all others saving only the State of Florida as the Wreck is embedded in the waters of the State of Florida. For over three decades JWI has been engaged in salvage operations on the Wreck and has maintained all legally required permits for such operations.

11. On or about December 20, 2022, JWI applied for the simple renewal (reauthorization) of an ACOE Permit (SAJ -1990-30285) that had been renewed by the ACOE for the past 33 years and well before his previous permit expired.

12. The ACOE has yet to issue or renew that permit after almost 2 years. The ACOE has stated in writing several times that they had everything they need and it would be done before the expiration of July 2023.

13. The ACOE offered, in October of 2023, a Programmatic Agreement (PA) and in February of 2024 the ACOE offered a "Proffered Permit" in leu of a permit renewal. Both documents gave the ACOE complete control of all aspects of JWI's rights under their Admiralty Claim. JWI rejected the PA as no authority was given demonstrating the ACOE had the authority to require such an agreement and compiled an Administrative Appeal of the Proffered Permit.

14. JWI delivered its Appeal to the ACOE office in Atlanta, GA as of noon February 25, 2024.

15. The Appeal was received at 11:39P.M., February 28, 2024, and acknowledged at 6:34 A.M., February 29, 2024.

16. The ACOE determined the Appeal to be complete and acceptable March 21, 2024.

17. Pursuant to 33 CFR 331 a conference on the Appeal is required within 60 days of acceptance by the ACOE.

18. Pursuant to 33 CFR 331 a decision on the Appeal required within 90 days of acceptance.

19. On April 25, 2024, the ACOE scheduled a conference on the Appeal either May 8, 13 or 14, 2024.

20. On May 6, 2024 the ACOE made a request for JWI to confirm the reasons for the Appeal. JWI promptly responded.

21. On May 8, 2024, the ACOE cancelled the conference on the Appeal and Ms. Sabin withdrew as the Review Officer as that role is defined in 33 C.F.R. § 331.3 ("RO").

22. On May 15, 2024 the ACOE appointed Mr. Dangler as the Review Officer.

23. As of the date of filing this action, over 91 calendar days have passed and contrary to the requirements of 33 C.F.R. §331.8 the ACOE has failed to issue its final decision on the Appeal.

24. This action is not based on a permit denial or a proffered permit, but rather is to invoke the power of the court to determine the rights between the parties, and if needed to compel the ACOE to act in accordance with its own rules, regulations, and enabling statutes.

## COUNT I – DECLARATORY JUDGMENT

25. JWI realleges paragraphs 1 through 24 as if set forth separately herein.

26. There exists a genuine dispute between JWI and ACOE as to whether ACOE has the jurisdiction and authority over JWI to require a permit for JWI's activities in exercising its admiralty rights of salvage of the Wreck.

27. ACOE maintains that the activities of JWI constitute dredging and as such it has the jurisdiction and authority to require JWI to obtain a permit and provide the ACOE with archeological control before JWI can exercise its admiralty rights of salvage of the Wreck.

28. JWI maintains that its activities pursuant to its admiralty rights of salvage are not dredging because, among other things, no sea floor material is ever removed from the water as part of its activities in exercising its admiralty rights of salvage on the Wreck.

29. As a matter of law the activities of JWI in exercising its admiralty rights of salvage on the Wreck do not constitute dredging and all fill complies with the regulatory definition of incidental fall back which does not require a permit from the ACOE.

30. In 1966 the National Historic Preservation Act (NHPA) established a review process known as Section 106 to ensure that federal agencies consider the effects of federally licensed, assisted, regulated or funded activities on historic properties listed or eligible for listing on the National Register.

31. In 1987 the Abandoned Shipwreck Act of 1987 (ASA or Act) (43 U.S.C. §§ 2101 et seq.), specifically shifted the ownership of shipwrecks in State Waters from the Federal Government to the respective states and shifted responsibility for the NHPA Section 106 to the State Historic Preservation Officers by stating in Section 6 item: "(6) The public shall be given adequate notice of the location of any shipwreck to which title is asserted under this section. The Secretary of the Interior, after consultation with the appropriate State Historic Preservation Officer,

shall make a determination that an abandoned shipwreck does or does not meet the criteria for eligibility for inclusion in the National Register of Historic Places."

32. That statement removed the ACOE responsibility and authority for Section 106 reviews regarding shipwrecks in State Waters and made it Law that the State has that responsibility.

33. The State of Florida was granted title to the Wreck pursuant to the ASA under the Admiralty Claim and has issued a permit for JWI's salvage activities.

34. The ACOE over the last 33 years has required JWI and other similar marine salvage companies to apply and be issued a "Dredge and Fill" permit in accordance with the Rivers and Harbors Act and Section 404 of the Clean Water Act.

35. During that period the CFRs and other laws have changed over and over again. The current legal definition of dredged materials is the "removal of material from the waters of the United States".

36. The process used by JWI and other marine salvors is to fan or move but never remove the overburden from the subject shipwrecks. JWI never removes any material from the water. Similarly, section 404 of the Clean Water Act specifically excludes "incidental fallback" from the requirement for a permit.

37. In 2001 the Army Corps of Engineers, the DOD, and the Environmental Protection Agency defined "Incidental Fallback" in the Federal Register, 4550, Vol,66, No 21/Wednesday, January 17 2001/Rules and Regulations 33 CFR 323 and 40 CFR part 232 as a process that "returns material virtually to the spot from which it came."   And further it says "incidental fallback" as occurring "when redeposit takes place in substantially the same spot as the initial removal."

6

38. The salvage activities of JWI in the exercise its admiralty rights of salvage of the Wreck are a traditional method initially conceived by salvor, Mel Fisher, and adapted over the years by other salvors.

39. The current method to be employed by JWI, is described by the Florida Department of Environmental Protection as follows:

> When excavating a hole, the sand is displaced around the hole and forms a berm around the hole. As soon as the excavator is stopped, the hole begins to fill, giving the divers only a few minutes to check the hole with their metal detectors. Within a few hours the holes are completely refilled and the sand is dispersed back on the bottom. It's like calling Servpro after a flood or fire in your home "It's like it never happened". **In no case is the sand brought to the surface or removed form [sic] the bottom.**

The above description is from an email string dated July 25, 2007, for a permit prepared by Cynthia E. Lott, Environmental Specialist II, FL Dept. of Environmental Protection/ SE District, Submerged Lands and Environmental Resource Permitting (Emphasis added).

40. Pursuant to 33 C.F.R. § 323.2(c) the term "dredged material means material that is excavated or dredged **from** waters of the United States." (emphasis added).

41. It is undisputed that JWI does not remove any sea floor material **from** the waters of the United States. It is undisputed that the covering sea floor material over potential Wreck items is not resuspended into the waters, but rather returns virtually to the spot from which it came. As such, the ACOE has no jurisdiction nor authority to require any permits or other inspections of the work performed by JWI.

42. The attempts by the ACOE to improperly and unlawfully regulate JWI's lawful salvage activities is violative of all provisions of 5 U.S.C.S. § 706(2)(A-F).

7

43. This Court is empowered to determine if the ACOE "has engaged in '"reasoned decisionmaking'" within the boundaries of its statutory authority. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024).

44. The definitions of JWI's lawful and permitted salvage activities do not "change just because the agency has happened to offer its interpretation through the sort of procedures . . .." *Loper*, 144 S. Ct. 2244.

45. This Court has the responsibility to exercise its independent judgment when interpreting the law and cannot disregard that "responsibility just because an Executive Branch agency views a statute differently." *Id.*

WHEREFORE, Jupiter Wreck, Inc. respectfully requests this Court for judgment against the U.S. Army Corp of Engineers declaring:

    a. That under the Abandoned Shipwreck Act, the ACOE does not have jurisdiction over the Wreck, as it is embedded in the state waters of Florida;

    b. That the activities of JWI are not dredging or filling as defined under Federal law;

    c. That the ACOE has no power or authority to require inspections or permits related to JWI's activities related to the Wreck in pursuance of its valid Admiralty Claim; and

    d. Any other relief the Court deems just and proper.

## **WRIT OF MANDAMUS**

46. JWI realleges the allegations of paragraphs 1 through 24 as if set forth separately herein.

47. Federal law and regulations clearly set forth the required timeline for the conduct and review of permitting appeals by the ACOE.

48. As demonstrated in detail below, the ACOE has failed or refused to abide by these time strictures and caused harm to JWI, including changing the permit wording from what was originally published.

49. This Court is empowered by 28 U.S.C. § 1361 to issue a writ of mandamus compelling the Army Corps of Engineers to act in accordance with their duties under Chapter Eleven of Title 33, Navigation and Navigable Waters, and more particularly 33 U.S.C. §§ 494, 512, 513 and Clean Water Act 33 U.S.C. §1344.

50. Pursuant to 33 C.F.R. § 331.8, it states: "The Division Engineer will make a final decision on the merits of the appeal at the earliest practicable time, in accordance with the following time limits. The administrative appeal process is initiated by the receipt of an RFA by the division engineer. The Corps will review the RFA to determine whether the RFA is acceptable. The Corps will notify the appellant accordingly within 30 days of the receipt of the RFA in accordance with § 331.7(b). If the Corps determines that the RFA is acceptable, the RO will immediately request the administrative record from the district engineer. The division engineer will normally make a final decision on the merits of the appeal within 90 days of the receipt of an acceptable RFA unless any site visit is delayed pursuant to § 331.7(c). In such case, the RO will complete the appeal review and the division engineer will make a final appeal decision within 30 days of the site visit. In no case will a site visit delay extend the total appeal process beyond twelve months from the date of receipt of an acceptable RFA."

51. No Site visit has ever been mentioned by the ACOE and when JWI invited them in face-to-face meetings, they stated they did not have the time or manpower to do so.

52. The ACOE failed to schedule a conference on the Appeal as required within 60 days of acceptance of the appeal, only recently holding such conference on July 23, 2024 and at

this conference, the ACOE stated that it will take another year for them to make a final decision on their permit.

53. All of the above actions by the ACOE are in violation of Federal law and upon information and belief are the result of the unethical bias of Robin Moore, archeologist for the ACOE.

54. At all material times, the ACOE was acting by and through its employees, and in particular, Robin Moore.

55. Mr. Moore is a member of the Register of Professional Archeologists (RPA). The organization has a strict code of conduct and a detailed procedure for lodging grievances against members who violate this code of conduct. See https://www.rpanet.org/code-and-standards.

56. Upon information and belief, Mr. Moore, while acting in the course and scope of position with the ACOE chose to follow the code of conduct of the RPA, rather than the clear Federal law applicable to JWI's activities and the exemptions related to such activities. This is because JWI is engaged in the commercial exploitation of artifacts it lawfully salvages from the Wreck. Although JWI engages in these activities lawfully, the ACOE, through the actions of Mr. Moore, has denied JWI its lawful rights of salvage.

57. In section 2.11 of the RPA, Register Code of Conduct, it states: "You shall not knowingly be involved in the recovery or excavation of archaeological resources or human remains for commercial exploitation, as defined by the United Nations Educational, Scientific and Cultural Organization. Further, you shall not knowingly be employed by or contract with an individual or entity that recovers or excavates archaeological resources or human remains for commercial exploitation. You shall not allow the use of your name or support for any recovery or excavating of archaeological resources or human remains for commercial exploitation."

58. Rather than follow the Federal statutes, regulations, and required timelines, the ACOE, acting through Mr. Moore, has chosen to instead uphold the RPA code of conduct and to delay and deny JWI its lawful right of salvage as determined by the Federal Courts and violative of all provisions of 5 U.S.C.S. § 706(2)(A-F).

59. This Court is empowered to determine if the ACOE "has engaged in "'reasoned decisionmaking'" within the boundaries of its statutory authority. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024).

60. The definitions of JWI's lawful and permitted salvage activities do not "change just because the agency has happened to offer its interpretation through the sort of procedures . . .." *Loper*, 144 S. Ct. 2244.

61. This Court has the responsibility to exercise its independent judgment when interpreting the law and cannot disregard that "responsibility just because an Executive Branch agency views a statute differently." *Id.*

WHEREFORE, Plaintiff, JUPITER WRECK, INC., respectfully requests this Court for a Writ of Mandamus requiring the ACOE to immediately issue the permit renewal of JWI as it was applied for, paid for and as published to the public and any relief that is just and proper.

                         LINDSEY BROCK LAW, P.A.

                         */s/ Lindsey C. Brock III*

                         **LINDSEY C. BROCK III, ESQ.**
                         Fla. Bar #971669
                         Primary E-Mail: lindsey@lindseybrocklaw.com
                         Secondary E-Mail: jennifer@lindseybrocklaw.com
                         9995 Gate Parkway North, Ste. 400
                         Jacksonville, Florida 32246
                         (904) 996-1100 Office Telephone
                         (904) 996-1120 Facsimile

David Paul Horan, Esq.

Fla. Bar # 142474
Horan Law
Email: david@horan.law
608 Whitehead St.
Key West, FL 33040-6549
(305) 294-4585 Office Telephone
(305) 294-7822 Facsimile
**Attorneys for Plaintiff, Jupiter Wreck, Inc.**